**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*,[1] | : | Case No. 15-01145 (ABG) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | | |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*, | : | |
| | : | |
| | : | Chapter 11 |
| *Plaintiffs*, | : | |
| vs. | : | Adversary Case No. 15-00149 |
| | : | |
| BOKF, N.A., *et al.*, | : | |
| | : | |
| *Defendants*. | : | |

**BOKF, N.A.'S OBJECTION AND REQUEST FOR CONSIDERATION OF
CONDITIONAL RESOLUTION IN AID OF MEDIATION WITH RESPECT TO
DEBTORS' MOTION TO EXTEND THE SECTION 105 INJUNCTION ENJOINING
DEFENDANTS FROM FURTHER PROSECUTING THEIR GUARANTY LAWSUITS**

BOKF, N.A. ("BOKF" or the "Trustee"), solely in its capacity as successor trustee under the Indenture dated as of April 16, 2010 (as supplemented or amended, the "BOKF Indenture") for the 12.75% Second Priority Senior Secured Notes Due 2018 (the "12.75% Second Priority Notes"), through counsel, hereby files this Objection and Request for Consideration of Conditional Resolution in aid of mediation (the "Objection") with Respect to the Debtors'

---

[1] The last four digits of Caesars Entertainment Operating Company, Inc. ("CEOC")'s tax identification number are 1623. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/CEOC.

Motion to Extend the Section 105 Injunction Enjoining Defendants from Further Prosecuting Their Guaranty Lawsuits [Adv. Pro. ECF No. 284] (the "Third Injunction Motion").[2] In support hereof, BOKF respectfully states as follows:[3]

## PRELIMINARY STATEMENT

1.  This case is no longer in its infancy. It is rapidly moving toward a cramdown confirmation trial. Over five months (or 158 days) have passed since the Examiner issued his long-awaited report, and yet the Debtors, CEC, the Sponsors, and the myriad others who bask in the glow of the third-party releases awaiting them upon confirmation of the current plan—notwithstanding the serious allegations levied against them in that report and in the Debtors' own recently filed complaint—have failed to resolve the very cases they have fought tooth-and-nail to enjoin. Enough is enough. The Court should deny the Third Injunction Motion and allow the BOKF Action (and the other Guarantee Actions) to proceed to adjudicate CEC's liability on the Guarantee (defined below). The Court's June 105 Order was clear:

> The duration will be short. The purpose of granting the injunctive relief here is to facilitate a negotiated resolution of the disputes in this case.
>
> ****
>
> Because deadlines, not uncertainty alone, spur settlement, the debtors will not be granted injunctive relief through confirmation. The injunction will instead expire on August 29, 2016—the same 74-day injunction the debtors were granted before. To encourage the debtors and CEC to make good use of that 74-day period, they are warned that the likelihood any further injunctive relief will be granted is small. **The August 29 expiration date should accordingly be considered a deadline to reach a resolution**.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Third Injunction Motion.

[3] BOKF joins in and incorporates by reference the arguments, contentions and allegations set forth in the Objection of WSFS to Debtors' Motion to Extend the Section 105 Injunction Regarding Guaranty Actions, filed contemporaneously herewith.

June 105 Order, dated June 15, 2016 [Adv. Pro. ECF No. 274] (the "June 105 Order"), at 5-6 (emphasis added).

2.  Each time the Court extended the injunction of the Guarantee Actions, the Court consistently stated that the injunction was intended to allow the parties to negotiate a consensual restructuring plan. At the start of the third evidentiary hearing, 180 days will have passed since the Court first enjoined BOKF from prosecuting its action in the District Court.[4] During this nearly half-year period, the Debtors have failed to reach a resolution of the disputes in these cases, and more importantly, for an extended period of time, CEC refused to even engage with the Second Lien Noteholders to negotiate a consensual plan. Further, there is no evidence that the most recent injunction led to the restructuring support agreements ("RSAs") touted by the Debtors in their Motion, almost all of which were discussed at the prior injunction hearing.

3.  Despite all of this, the Debtors have the gall to ask this Court to extend the injunction *through confirmation*. There is no basis to grant such relief or reward CEC and the Sponsors who stand to benefit from yet another injunction.[5] Incredibly, the Sponsors have not yet signed the mediation protocol agreement, have not reached out to or spoken to BOKF (nor has CEC), are not independently and directly participating in mediation to BOKF's knowledge, and still provide no value in exchange for broad releases under the Plan.[6]

---

[4] BOKF is the plaintiff in an action pending in the United States District Court for the Southern District of New York (the "District Court"), *BOKF, N.A. v. Caesars Entm't Corp.*, No. 15-cv-1561 (JSR) (the "BOKF Action"). Citations to court filings in the BOKF Action will be to "BOKF ECF No. ___."

[5] In addition to avoiding a judgment, CEC will likely continue to utilize the injunction period to lobby for a retroactive amendment to the Trust Indenture Act. *See infra* ¶ 18.

[6] CEC, the Sponsors, and certain of the other CEC Released Parties (defined below) are defendants against whom the Debtors have asserted claims for, among other things, intentional fraud and breaches of fiduciary duty. *See Caesars Entm't Operating Co. v. Caesars Entm't Corp. et al.,* Adv. Pro. No. 16-00522 (the "CEOC Adversary Proceeding")

4.      The Debtors' request for an injunction is premature at this point unless and until CEC *loses* on the upcoming summary judgment decisions.  CEC has trumpeted that it did not lose during the first rounds of summary judgment briefing before the District Court.  While BOKF is confident in its summary judgment arguments to the District Court—this time with the benefit of a full record—a case dispositive ruling in favor of BOKF (and the other SDNY Guarantee plaintiffs) is not a *fait accompli*.  **But to the extent CEC receives an adverse ruling on the summary judgment motions in the BOKF Action, BOKF will agree not to execute on a judgment for thirty (30) days in order to allow the parties to negotiate a possible resolution and continue to participate in mediation**.[7]  This is the best alternative as it will strike the right negotiating balance among the parties, foster continued discussions, and avoid any alleged imminent harm to CEC's financial resources and purported contribution under the Plan.  And, it would benefit all parties since it would allow the mediation to continue without interruption and form a basis for continued mediation.

5.      BOKF's proposal is particularly appropriate when considering both the key terms of the Debtors' Plan and the current status of the BOKF Action (and the other Guarantee Actions).  Under the Plan, CEC will allegedly make a contribution in exchange primarily for (i) releases of claims the Debtors may hold against CEC and the Released Parties[8] under Article

---

[7] After the expiration of the fourteen (14) day period under Fed. R. Civ. Pro. 62(a), BOKF will agree not to execute for an additional sixteen (16) days resulting in a thirty (30) day stay from the time a judgment is entered.

[8] The "Released Parties" include the CEC Released Parties, defined as:

> [E]ach and all of:  (a) CEC; (b) CAC; (c) the Sponsors; and (d) with respect to each of the foregoing identified in subsections (a) through (c) herein, each and all of their respective direct and indirect current and former shareholders, affiliates (other than the Debtors), subsidiaries (other than the Debtors and their direct and indirect subsidiaries), partners (including general partners and limited partners), investors, managing members, officers, directors, principals, employees,

- 4 -

VIII.B of the Plan (the "Debtor Releases"); (ii) CEC's retention of its equity ownership in the reorganized entities notwithstanding the absolute priority rule; and (iii) releases of claims that third parties may hold against the Released Parties (including BOKF's guarantee claims against CEC) under Article VIII.C of the Plan (the "Third-Party Releases"). The Debtor Releases, the new value exception and the Third-Party Releases will each be subject to a different and distinct legal standard at confirmation. No value is being provided by the Sponsors or the other CEC Released Parties. Before this Plan can be confirmed, CEC's liability on the Guarantee must be addressed in order to independently evaluate the propriety of the Third-Party Releases.[9]

6.  This work has already been done in the BOKF Action. Issues relating to the contractual interpretation of the guarantee provisions in the BOKF Indenture under New York law and to violations of the Trust Indenture Act, 15. U.S.C. §§ 77aaa, *et seq.* (the "TIA") have been extensively briefed before the Hon. Jed S. Rakoff. BOKF and CEC both filed motions for summary judgment that are ripe for decision, discovery closed on October 13, 2015, and only a limited subset of pre-trial work remains unfinished. If BOKF (and the other Guarantee plaintiffs) are allowed to continue prosecuting their respective actions, the District Court (and the Delaware Chancery Court) is positioned to determine CEC's liability on the Guarantee soon. Without immediate execution on the judgment, to which BOKF is willing to agree, adjudication of whether CEC is liable for its unconditional guarantee will be beneficial to the parties and these chapter 11 cases because it will help the parties, the mediator and the Court understand relative

---

>  managers, controlling persons, agents, attorneys, other professionals, advisors, and representatives, and each and all of their respective heirs, successors, and legal representatives, each in their capacities as such.

Plan Art. I.A.52.

[9] As the Court is aware, the Examiner's Report contains no separate analysis of the claims asserted in the Guarantee Actions.

rights and what value should be placed on the Guarantee claims for purposes of settlement and ultimately during the confirmation process.[10]  Sooner or later this issue must be decided.

7.   The current context of uncertainty has failed to produce a consensual resolution and appears to no longer have an impact on the parties.  Yet even with a determination of liability that narrows the issues, whether for or against CEC, confirmation risks and other litigation uncertainties exist for all parties.  Uncertainty as to the outcome of the BOKF Action, when and how Judge Rakoff rules, and a likely appeal will create new and different uncertainties and risks.  These new and different risks may also move the mediation forward.  Thus, BOKF's proposal allows negotiating leverage to remain steady without favoring a particular party.

8.   The Debtors' proposed path, which the Court previously rejected, seeks an injunction *through confirmation regardless of whether a settlement is reached* to "allow this Court to determine whether a Plan . . . is in the best interests of the bankruptcy estate and should be confirmed."  Third Injunction Motion, ¶ 15.  Such relief is inequitable and highly prejudicial to BOKF, which will never have the opportunity to be heard in District Court and whose holders receive no value in exchange for the Third-Party Releases under the Plan.[11]  If the Debtors were genuine as to their motivations and truly sought to maintain balance, they would seek a limited (and perhaps final) extension of the injunction accompanied by a concurrent extension of all deadlines associated with Plan confirmation, rather than an open-ended extension through the

---

[10] For example, given that this is the third evidentiary hearing to enjoin the Guarantee Actions, it is unclear how the Debtors justify the current $0 payment to release the Guarantee claims.

[11] Indeed, it is the Guarantee plaintiffs who are the victims of what the Examiner concluded was a comprehensive prepetition plan orchestrated by CEC and the Sponsors to move valuable assets out of the reach of CEOC's creditors and preserve leverage in the event of a CEOC bankruptcy. Examiner's Report at 2 ("[B]y sometime late in 2012 the Sponsors adopted and began to implement a strategy . . . to strengthen CEC's and the Sponsors' position in a potential restructuring negotiation with creditors and improve their position in the event of a CEC or CEOC bankruptcy"); *see also id*. at 5, 341–44, 808.

unspecified date of the first omnibus hearing after the Court issues its decision confirming or denying confirmation of the Plan. But the Debtors contractually agreed on July 9 under the CEC RSA (assuming the agreement is binding and enforceable) to seek an injunction through confirmation. The fact that the Debtors agreed to seek this essentially permanent injunction over thirty (30) days ago contradicts the contentions in the Third Injunction Motion. The Debtors' motives and proclamations about restoring balance to the negotiation process are not credible, and any further injunction is inequitable.

## RELEVANT BACKGROUND

9.  BOKF is the successor trustee under the 2010 Indenture, contractually and statutorily charged with representing the interests and enforcing the rights of the beneficial holders of approximately $750,000,000 of the 12.75% Second Priority Notes issued by CEOC and unconditionally and irrevocably guaranteed by non-debtor CEC, the Debtors' ultimate parent, as provided under the Indenture (the "CEC Guarantee" or the "Guarantee").

10. BOKF commenced the BOKF Action on March 3, 2015. The BOKF Action asserts claims for: (i) Breach of Contract – Guarantee; (ii) Declaratory Judgment that CEC's Guarantee Has Not Been Terminated or Released and Remains Valid, Binding and Enforceable on CEC Under the 2010 Indenture; (iii) Breach of Contract – Indenture §§ 6.01(h) and (e); (iv) Breach of Contract – Indenture § 6.07; (v) Violations of the TIA; (vi) Intentional Interference with Contractual Relations; and (vii) Breach of Duty of Good Faith and Fair Dealing. BOKF Compl. [BOKF ECF No. 1].

11. In June 2015, prior to the completion of discovery, BOKF filed a motion for partial summary judgment seeking a declaration that CEC's purported termination of the CEC Guarantee violated section 316(b) of the TIA ("Section 316") [BOKF ECF Nos. 30-33].

Although the District Court denied the motion, it made a number of holdings establishing the applicable standard for proving a violation of Section 316. *See generally* <u>BOKF, N.A. v. Caesars Entm't Corp.</u>, 144 F. Supp. 3d 459 (S.D.N.Y. 2015) [BOKF ECF No. 54] (the "<u>August 2015 Op.</u>"). The District Court held, among other things, that stripping the CEC Guarantee, if accomplished as part of an out-of-court restructuring, would violate Section 316(b). *Id.* at 475. The District Court also found it was not necessary for noteholders to prove an amendment to a core term of the BOKF Indenture. *Id.* at 468.

12. In November, 2015, after the completion of discovery, BOKF filed a motion for partial summary judgment on its breach of contract claim and sought a ruling from the District Court that the Stock Transfer (*i.e.*, the 5% Stock Sale and 6% Stock Transfer) did not result in the termination or release of CEC's Guarantee of the 12.75% Second Priority Notes. *See* Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment [BOKF ECF No. 62]. The District Court declined to reach the issue and denied the motion. *See* Mem. Op. and Order [BOKF ECF No. 76].

13. On May 10, 2016, BOKF moved for summary judgment on Counts I-IV for breach of contract and on Count V for violation of the TIA [BOKF ECF Nos. 146-151]. With respect to the TIA, BOKF asserts that it is entitled to summary judgment because the undisputed transactions undertaken by CEC were part of an integral plan that constitutes an out-of-court restructuring as a matter of law. Thus, even if CEC had complied with the guarantee release provisions in the BOKF Indenture (which BOKF asserts CEC failed to do), CEC's violation of the TIA would render the termination of the CEC Guarantee impermissible. With respect to the breach of contract claims, BOKF asserts that the CEC Guarantee was not released or discharged under the BOKF Indenture where each of the three enumerated conditions necessary to release

the CEC Guarantee, separated by the word "and," were not satisfied and where the last paragraph of the applicable guaranty section of the BOKF Indenture was not complied with. BOKF argues that the BOKF Indenture is unambiguous and compels such a finding as a matter of law. Memorandum In Support of Plaintiffs' Motion for Partial Summary Judgment [BOKF ECF No. 147], at 27-36.

14. CEC also moved for summary judgment on May 10, 2016 [BOKF ECF Nos. 141-145]. CEC argues, *inter alia*, that the interpretation of Section 316 set forth in the District Court's August 2015 Opinion was incorrect and that the District Court should adopt an interpretation that requires a change to a core term of the BOKF Indenture in order to find a TIA violation. *See* CEC's Memorandum of Law in Support of Its Motion for Summary Judgment [BOKF ECF No. 143], at 15-23. CEC also argues that even if the out-of-court reorganization standard set forth in the August 2015 Opinion applies, there is no genuine dispute that CEC did not violate Section 316. *See id.* at 24-28. In addition, CEC argues that the CEC Guarantee was properly released pursuant to the guarantee section of the BOKF Indenture. Specifically, CEC asserts that the three conditions for releasing the CEC Guarantee should be interpreted disjunctively so that only one of the three conditions must be met. *See id.* at 31-35. Further, CEC claims that it satisfied a separate guarantee provision of the BOKF Indenture that serves as an independent basis to release the CEC Guarantee. *See id.*

15. On June 14, 2016, parties in the Guarantee Actions pending in the District Court completed their respective summary judgment briefing. Oral argument is scheduled for Tuesday, August 30, 2016, at 4:00 p.m. EDT.

**ARGUMENT**

**I.   Adjudicating CEC's Guarantee Liability with a Voluntary Stay of Enforcement In Aid of Mediation Will Avoid the Alleged Risk Associated with an Adverse Judgment Against CEC and Advance these Cases**

15.   The Debtors' primary concern with the Guarantee Actions is the purported threat that execution of a judgment against CEC will drain its capital and threaten its ability to contribute to the Plan.[12]  *See* Third Injunction Motion, ¶¶ 12, 22, 28, 29, 30.  That concern is addressed in BOKF's proposal, which will determine liability first and provide at least an additional thirty (30) days for the parties to negotiate a resolution while continuing to participate in mediation before execution.  *See, e.g., In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369, 388 (Bankr. E.D. Pa. 2009) (requiring non-debtors to provide financial disclosures to judgment creditors but temporarily enjoining creditors from executing on the judgment to protect the debtor's interests in reorganizing); *see also In re G.S. Distribution, Inc.*, 331 B.R. 552 (Bankr. S.D.N.Y. 2005) (lifting the automatic stay to allow liquidation of claims in district court but requiring further order the bankruptcy court to enforce any judgment).

16.   In the February 26, 2016 Order [Adv. Pro. ECF No. 214] (the "Feb. 105 Order") on the Debtors' request for a thirty (30) day injunction following the issuance of the Examiner Report, the Court addressed BOKF's argument that allowing judgment on CEC's Guarantee liability would be beneficial to these cases.  *See* Feb. 105 Order, at 13.  The Court found that because the Debtors sought injunctive relief to pursue a consensual resolution of their

---

[12] This concern is questionable.  As the Court correctly noted during the August 17 Omnibus Hearing, there are a host of wrongdoers against whom the Debtors hold claims, yet they are not making any contributions to the estates in exchange for the broad releases they would receive under this Plan.  In light of the findings in the Examiner's Report and the Debtors' pending adversary proceeding against those defendants, there is no reason why the Debtors could not seek contributions from them to fund their reorganization plan, even if CEC could no longer contribute to the Plan based on an adverse ruling from the District Court.

bankruptcy cases, uncertainty as to the CEC Guarantee liability could help produce settlements to avoid risk. *Id*. In the Court's June 105 Order, the Court reiterated that the purpose of granting injunctive relief was to facilitate a negotiated resolution of the disputes. *See* June 105 Order, at 5. This approach no longer justifies the relief requested.

17. The Third Injunction Motion makes clear that the purpose of the proposed five month (approximately 142 day) injunction is not to achieve a negotiated resolution as contemplated by the Court, but to have the Court consider the Debtors' *non-consensual* Plan and *non-consensual* Third-Party Releases contained therein at confirmation *before* BOKF has an opportunity to have its case heard in District Court. *See* Third Injunction Motion ¶¶ 15, 27. While the Debtors state that a settlement is still desirable, they want to "reallocate" the risk back to the second lien noteholders and away from CEC, eliminating any risk of an impending judgment in the Guarantee Actions. Had the Debtors been serious about settlement, they would have requested a short injunction period. Restoring the prior imbalance whereby the Guarantee plaintiffs' hands are tied but the Debtors continue to aggressively litigate against them (and CEC continues to have its lobbyists seek a retroactive amendment to the TIA to moot the Guarantee Actions) will not foster settlement, as the Court has already recognized. *See* June 105 Order, at 5. In fact, the Debtors' requested injunction would likely hinder any hope of a consensual plan because CEC and the Sponsors would have no incentive to negotiate with the Second Lien Noteholders. They could simply "roll the dice" on the current Plan to see if they can obtain their releases without any further consideration to be paid by the Sponsors and any other wrongdoers.

## II.     The Debtors' Requested Injunction through Confirmation is Inequitable

18. The Debtors have failed to demonstrate why the requested injunction is equitable and why the Court should permanently enjoin the Guarantee plaintiffs from enforcing contractual

- 11 -

rights against CEC, which even the Debtors concluded engaged in intentional fraudulent conduct.[13] Indeed, the record reveals that another injunction—this time for a duration of the last two injunction periods combined— is highly inequitable and prejudicial to BOKF and the other Guarantee plaintiffs. As suspected, CEC (whom the Debtors have never sought to enjoin) has taken advantage of the prior injunction periods to lobby for amendment of the TIA before the District Court and the Delaware Chancery Court have the opportunity to adjudicate the Guarantee Actions. According to deposition testimony taken on August 17, 2016 of Brownstein Hyatt Farber Schreck, LLP's ("Brownstein") corporate designee, Marc S. Lampkin, CEC hired Brownstein in June 2015 and has spent over $2 million lobbying Congress to amend the TIA. In addition, Marc Rowan of Apollo and a member of the Board of Directors CEC and CAC, and formerly a member of the Board of Directors of CEOC (he resigned in March 2016), used the injunction period to, *inter alia*, meet with Rep. Maxine Waters (D-CA) and House Majority Leader Kevin McCarthy (R-CA) to discuss amending the TIA. This action is expected to continue when Congress returns from its summer recess. In short, CEC has used the injunction period to seek to make the BOKF Action go away through legislative action.

19. The Debtors and CEC proclaimed that they needed the current injunction to arrive at a consensual plan, yet used the Court's injunction as a sword against BOKF and the other Guarantee plaintiffs by trying to gain an unfair advantage in the Guarantee Actions through these

---

[13] *See* CEOC Adversary Proceeding, No. 16-00522, Compl. at ¶¶ 12-15 ("The Sponsors and CEC's strategy had several purposes. The first was to move CEOC's most valuable assets into new entities that would be insulated from CEOC's inevitable bankruptcy and improve the otherwise dismal prospects for the Sponsor's investment in CEC. . . . The second objective was, in essence, the willful destruction of CEOC's value. . . . A third objective—admitted by the Sponsors—was to strengthen the Sponsors' hand in restructuring negotiations with CEOC's creditors.").

lobbying efforts. As the Court observed, "[a] Section 105 injunction is an equitable remedy. To receive equity, . . . one must do equity." 8/17/16 Tr. at 22:5-6. There is no equity in such action.

20. BOKF's proposal maintains a balance in negotiating leverage with both sides facing ongoing risks. If no settlement is reached by August 29, clarifying CEC's liability on the Guarantee will aid the parties' and the Court's analysis of the contested Third-Party Releases while leaving unresolved numerous issues such as the value of the consideration, which parties are entitled to a release for which claims, and how unsecured creditors, including the Guarantee plaintiffs, benefit. Such new and different uncertainty ensures all parties affected by this adversary proceeding continue to face pressure to negotiate. In short, if the further extension is not granted, the parties will either be motivated to settle before August 29, or they and the Court will wait for the District Court (and the Delaware Chancery Court) to rule and be better informed in negotiating a resolution without the threat of execution on a judgment for a period of 30 days.

### III.   CEC's Guarantee Liability is a Confirmation Issue that Can and Should be Determined in Advance by the District Court

21. The Debtors' Plan purports that CEC will pay a certain amount of consideration primarily in exchange for three buckets of value: (i) Debtor Releases, (ii) the ability to retain equity without creditors being paid in full, and (iii) Third-Party Releases. There is a separate and distinct legal standard that will be applied for each. For example, the Debtors argue that the Debtor Releases will be analyzed as a settlement under section 9019 of the Bankruptcy Code while the non-consensual Third-Party Releases will be considered under applicable case law that addresses the limited circumstances under which a non-consensual third-party release can be approved. *See* Disclosure Statement [ECF No. 4220], at 148-150 (*citing In re Airadigm Communications, Inc*., 519 F.3d 640 (7th Cir. 2008) and *In re Ingersoll, Inc*., 562 F.3d 856 (7th

Cir. 2009)).[14] There can be no doubt that the relative rights of the parties, the merits of BOKF's and the other Guarantee plaintiffs' claims, and the value allocated in exchange for a release of those claims under the Third-Party Releases will be at issue at confirmation.[15] *See, e.g., In re Saxby's Coffee Worldwide, LLC*, 428 B.R. 331 (Bankr. E.D. Penn 2010) (finding that a plan including third-party releases must accord significant benefits to that constituency being restrained and that the court must be satisfied that those restrained creditors are being treated fairly).

21.    The District Court and the Delaware Chancery Court are positioned to decide the issue of CEC's liability on the Guarantee shortly. Motions for summary judgment are fully briefed. Indeed, it will be the second time summary judgment on the alleged TIA violation will be before the District Court. The parties also have extensively briefed the contractual interpretation issues, including how to interpret the three conditions for releasing the CEC Guarantee (*i.e.,* does "and" mean "and" or "or"). In the event summary judgment is denied, the parties in the District Court have already completed all discovery, exchanged expert reports, conducted expert depositions, and begun to prepare for trial.[16] With the BOKF Action far along and the CEC Guarantee issues ripe for adjudication, it would be most efficient and beneficial to allow the District Court to adjudicate CEC's liability on the Guarantee in the BOKF Action and

---

[14] The Debtors assert that where the third party releases are non-consensual, such releases are permissible in limited circumstances where the release is supported by "good and valuable consideration [that] will enable unsecured creditors to realize a distribution in this case." Disclosure Statement, at 149 (*citing In re Ingersoll, Inc*., 562 F.3d 856, 863-65 (7th Cir. 2009)).

[15] There are also legitimate concerns that the Plan's Third-Party Releases Plan represent a further implementation of CEC's and the Sponsors' prepetition strategy, condemned in the Examiner's Report, to gain leverage and preserve value for themselves at the expense of creditors through CEOC's bankruptcy.

[16] BOKF was two weeks away from the start of its jury trial when the Court issued the Feb. 105 Order.

the other Guarantee Actions pending before it, and allow the Delaware Chancery Court to adjudicate the issues in the WSFS Action. Allowing the District Court (and the Delaware Chancery Court) to issue their rulings will save this Court considerable time and resources during the confirmation process and avoid further discovery and litigation costs so that the parties may focus on mediation and other important contested matters.

## CONCLUSION

22. The breadth and scope of the requested injunctive relief is extraordinary, unwarranted, unjustified, and inequitable, and the Court should deny the Third Injunction Motion. Adjudication of CEC's liability on the Guarantee will foster a greater likelihood of a successful mediation and facilitate good faith, informed negotiations that BOKF believes will benefit the plan confirmation process.

WHEREFORE, BOKF respectfully requests that the Court enter an order denying the Third Injunction Motion. In the event the Court determines, however, that the Debtors have met their burden for a further injunction, BOKF respectfully requests that the third injunction be shorter than the previous two injunctions (*e.g.*, no longer than thirty (30) days) and be accompanied by a concurrent extension of all dates and deadlines associated with confirmation of the Plan in order to preserve the current time periods between the various deadlines.

*[Remainder of page intentionally left blank]*

Dated: August 19, 2016  
Chicago, Illinois

Attorneys for BOKF, N.A., solely in its capacity as successor Indenture Trustee for the 12.75% Second-Priority Notes due 2018

**FOLEY & LARDNER LLP**

By: /s/ Mark F. Hebbeln
Mark F. Hebbeln, Esq.
Lars A. Peterson, Esq.
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
mhebbeln@foley.com
lapeterson@foley.com

**ARENT FOX LLP**

Andrew I. Silfen, Esq.
(admitted *pro hac vice*)
Mark B. Joachim, Esq.
(admitted *pro hac vice*)
Mark A. Angelov, Esq.
(admitted *pro hac vice*)
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
andrew.silfen@arentfox.com
mark.joachim@arentfox.com
mark.angelov@arentfox.com

Jackson D. Toof, Esq.
(admitted *pro hac vice*)
1717 K Street, NW
Washington, DC 20006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
jackson.toof@arentfox.com