**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*, | ) ) ) | Case No. 15-01145 (ABG) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*, | ) ) ) ) | Chapter 11 |
| | ) | Adversary Case No. 15-00149 (ABG) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BOKF, N.A., WILMINGTON SAVINGS FUND SOCIETY, FSB, RELATIVE VALUE-LONG/SHORT DEBT PORTFOLIO, A SERIES OF UNDERLYING FUNDS TRUST, TRILOGY PORTFOLIO COMPANY, LLC, AND FREDERICK BARTON DANNER, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**STATEMENT OF THE AD HOC COMMITTEE OF FIRST LIEN BANK LENDERS IN SUPPORT OF THE DEBTORS' MOTION TO EXTEND THE SECTION 105 INJUNCTION ENJOINING DEFENDANTS FROM FURTHER PROSECUTING THEIR GUARANTY LAWSUITS**

The ad hoc committee (the "Ad Hoc Bank Lender Committee") of beneficial holders, or the investment advisors or managers for certain beneficial holders, of first lien bank debt issued by the Debtors (the "Bank Lenders"), by and through its undersigned counsel, hereby respectfully files this statement in support of the *Debtors' Motion to Extend the Section 105 Injunction Enjoining Defendants from Further Prosecuting Their Guaranty Lawsuits*

[Dkt. No. 284] (the "105 Motion").[1]

1. The Court previously determined that issuing an injunction against the Defendants' parent guaranty actions (the "Guaranty Lawsuits") was appropriate because it would "give the parties an opportunity to negotiate an overall settlement of this immense, and immensely complicated, bankruptcy,"[2] (Feb. 105 Order at 17 (internal citation omitted)) and help "facilitate a negotiated resolution of the disputes in this case."[3]  June 105 Order at 5.  Likewise, the Court found that the Debtors had made appreciable progress reaching settlements with key creditor groups, and this progress was "enough to show a continued likelihood of a successful reorganization – in the sense of a fully consensual plan, the debtors' goal." *Id.* at 4.

2. Today, the case for a continued injunction of the Guaranty Lawsuits is even stronger than it was in February or June.  First, the Debtors and their parent have made further progress towards a consensual plan in negotiations and agreements with major creditor constituencies in the case.  Second, the confirmation process – and the concomitant time, effort and expense borne by all parties involved in these cases – is well underway.  Allowing the section 105 injunction to lapse now puts the entire plan process set in motion by the Court at immediate risk – and similarly jeopardizes the numerous and heavily negotiated creditor settlements reached by the Debtors and their parent – for the simple reason that CEC is not capable of both satisfying judgments in the Guaranty Lawsuits and financing the Plan. Regardless whether any other entities or individuals also make contributions to the Plan, CEC's

---

[1] Capitalized terms not defined herein have the meanings set forth in the 105 Motion.

[2] *Order Granting in Part and Continuing in Part Debtors' Motion to Stay or in the Alternative for Injunctive Relief* [Dkt. No. 214] (the "Feb. 105 Order").

[3] *Order Granting Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction* [Dkt. No. 274] (the "June 105 Order", and together with the Feb. 105 Order, the "105 Orders").

contributions are necessary to consummate the Plan and, therefore, the fate of the Plan depends on an injunction of the Guaranty Lawsuits.  Moreover, the issue whether third parties have contributed to the estates such that they should be granted releases under the Plan is an issue to be litigated and determined in connection with confirmation; not something to be prejudged now in the context of the 105 Motion.  Rather, extending the section 105 injunction through confirmation ensures that the Debtors have an opportunity to establish that such releases should ultimately be approved (at the appropriate time) and also offers the opportunity for continued progress through further negotiation.  The alternative subjects all parties to the risk of essentially starting over if the Guaranty Lawsuits are allowed to proceed to judgment against CEC.  Potentially resetting the timeline on a case that is already over eighteen months old will drastically increase the estates' expenses that already exceed $1 million per day and will likely gut the very process that the Court set in motion with its approval of the disclosure statement in June.

3.       The Court's remarks in connection with the June 105 Order were helpful, and the protection offered by the injunction is working.  Since the June 105 Order was entered, the Debtors and CEC executed an amended RSA pursuant to which Bank Lenders holding a majority of the outstanding bank debt committed to support the Plan on certain terms and conditions. 105 Motion ¶ 1.  The Debtors also reached consensus with holders of more than 65% of the outstanding subsidiary-guaranteed notes pursuant to the SGN RSA that became effective on June 21, and they reached agreement with the UCC on June 22.  *Id.*  More recently, the Debtors and CEC entered into the Second Lien RSA with 37% of the second lien noteholders that provides for significantly enhanced second lien recoveries.  *Id.*  The Debtors and CEC also recently entered into a settlement and forbearance agreement with Frederick Barton Danner that

provides for improved treatment to holders of certain senior unsecured notes. *See* Caesars Entm't Corp., Current Report (Form 8-K) (Aug. 17, 2016). Furthermore, the members of the ad hoc committee of first lien noteholders are still parties to their existing RSA.

4. The numerous settlements demonstrate progress and momentum, and the continued march to the January 2017 confirmation hearing will either bring the remaining parties closer to global consensus or significantly narrow the disputed issues to be addressed at confirmation. Protecting this progress and the confirmation process is paramount to ending these cases, a goal shared by all parties. In truth, the only large creditor group that continues to fight the Plan consists of a slim majority of second lien noteholders, led by the Official Committee of Second Priority Noteholders (the "<u>Noteholder Committee</u>"), who have seen the potential recovery on their claims increase dramatically since the start of these cases. The Noteholder Committee also remains in mediation with the Debtors and CEC, and the mediator stated that he believes an agreement can be reached with the Noteholder Committee by the conclusion of the confirmation hearing. *See Mediator's Statement* ¶ 3 [Dkt. No. 293]. The Court should also not lose sight of the fact that the Noteholder Committee accused the Debtors and CEC of not engaging in negotiations in an effort to prevent the entry of the June 105 Order. Since the entry of that order, however, the Debtors and CEC have reached agreements with numerous parties and have provided a mechanism for dramatically enhanced second lien recoveries. In contrast, the Noteholder Committee has engineered two voting agreements to attempt to block acceptance of the Plan by second lien noteholders and render the Second Lien RSA incapable of becoming effective.

5. In any event, the Court need not evaluate whether the Debtors' proposed treatment of some discontented creditors is adequate in the context of ruling on the 105 Motion;

rather, such analysis is appropriately performed in connection with confirmation. At this point, it is sufficient for the Court to observe that the Debtors and CEC have done their part to advance these chapter 11 cases and are continuing to do so. To condition further injunctive relief on the Debtors reaching consensus with every creditor would vest hold-out parties with inordinate bargaining power, and the Court should not permit the confirmation process to be held hostage in this manner.

6. Furthermore, it does not make sense to allow the Guaranty Lawsuits to potentially upend the parties' – and indeed the Court's – efforts to get to confirmation. All of the work done to date in support of the confirmation process would be wasted if judgments were entered in favor of the plaintiffs in the Guaranty Lawsuits (the "Guaranty Plaintiffs").

7. As the Debtors note in their 105 Motion, over $11.4 billion in judgments could be entered against CEC by mid-September, which "would deprive CEC of the assets needed to satisfy the estate's claims and rule out any CEC contribution to the plan." 105 Motion ¶ 30 (quoting Feb. 105 Order at 11). Rather than serve as the chief financier of the Debtors' restructuring, "CEC would end up in a bankruptcy case of its own." *Id.* (quoting Feb. 105 Order at 11). What's more, this outcome is potentially imminent, as Judge Rakoff could enter judgments against CEC in the New York Guaranty Lawsuits as early as August 30. *Id.* Nullifying all of the hard-earned progress toward a global deal, as well as the extraordinary amount of time and resources expended on the Debtors' restructuring efforts, is not an outcome that makes sense, especially in light of the fact that there is little harm to the Guaranty Plaintiffs if the 105 Motion is granted. Indeed, the result of extending the section 105 injunction for the Guaranty Plaintiffs is that they have their day before this Court to test their opposition to the Plan. The Court should not provide any party with a way to subvert such core functions of the

Bankruptcy Court as holding a confirmation hearing and testing a plan that enjoys wide creditor support, especially when it is the only plan to progress this far in more than a year and a half.

8. As this Court previously recognized in issuing the 105 Orders, injunctive relief will ensure that the Debtors have an opportunity to test the viability of the proposed Plan that is now supported by a vast majority of creditors. Absent an injunction, the fate of the Debtors' restructuring hangs in the balance, and all the time and resources spent advancing these chapter 11 cases to a conclusion would be for naught. The Ad Hoc Bank Lender Committee therefore respectfully urges the Court to grant the 105 Motion.

| | |
|---|---|
| Dated: August 19, 2016<br>Chicago, Illinois | Respectfully submitted,<br><br>*Brian L. Shaw*<br>Brian L. Shaw<br>SHAW FISHMAN GLANTZ & TOWBIN LLC<br>321 N. Clark Street, Suite 800<br>Chicago, Illinois 60654<br>Telephone: (312) 541-0151<br><br>-and-<br><br>STROOCK & STROOCK & LAVAN LLP<br>Kristopher M. Hansen<br>Kenneth Pasquale<br>Jonathan D. Canfield<br>180 Maiden Lane<br>New York, New York 10038<br>Telephone: (212) 806-5400<br><br>*Counsel to the Ad Hoc Committee of First Lien Bank Lenders* |