**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re:* <br><br> CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*,[1] <br><br>                              Debtors. | Chapter 11 <br><br> Case No. 15-01145 (ABG) <br><br> (Jointly Administered) |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*, <br><br>                              Plaintiffs, <br><br> v. <br><br> BOKF, N.A., WILMINGTON SAVINGS FUND SOCIETY, FSB, RELATIVE VALUE-LONG/SHORT DEBT PORTFOLIO, A SERIES OF UNDERLYING FUNDS TRUST, TRILOGY PORTFOLIO COMPANY, LLC, AND FREDERICK BARTON DANNER, <br><br>                              Defendants. | Adversary Case No. 15-00149 (ABG) |

**RESPONSE OF STATUTORY
UNSECURED CLAIMHOLDERS' COMMITTEE TO
DEBTORS' MOTION TO EXTEND THE SECTION 105 INJUNCTION ENJOINING
DEFENDANTS FROM FURTHER PROSECUTING THEIR GUARANTY LAWSUITS**

The statutory unsecured claimholders' committee (the "UCC") of Caesars Entertainment Operating Company, Inc. ("CEOC"), *et al.* (collectively with CEOC, the "Debtors") respectfully submits this response to the Debtors' *Motion to Extend the Section 105 Injunction Enjoining Defendants from Further Prosecuting Their Guaranty Lawsuit* [Adv. ECF No. 284]. In support thereof, the UCC avers as follows:

---

[1] A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained at https://cases.primeclerk.com/CEOC.

**Response**

1.    The restructuring support agreement that Caesars Entertainment Corporation ("CEC") and CEOC entered into on July 31, 2016 with certain holders of CEOC's second lien notes (the "2L RSA") proposes to provide the 2L RSA signatories with a baseline recovery of 46 cents on the dollar and a potential overall recovery of up to 55 cents on the dollar.  *See* CEC Press Release dated August 1, 2016.

2.    On June 22, 2016, the UCC agreed to support a 46 cent baseline recovery for unsecured claimholders with claims against CEOC and non-bondholder claims against Debtor subsidiaries because it could rely upon the "most favored nation" provision (the "MFN") in the current Plan (as defined below), which the UCC negotiated with the Debtors and CEC to ensure recoveries to its constituents will equal those ultimately provided to the second lien noteholders (the "2Ls").  *See* UCC Restructuring Support Agreement, dated June 22, 2016 (the "UCC RSA"), ¶ 30; *see also Debtors' Second Amended Joint Plan of Reorganization* [ECF No. 4218-1] (as may be subsequently amended or modified, the "Plan"), at 13.

3.    If and when effective, the 2L RSA will trigger the MFN and provide unsecured claimholders holding claims against CEOC or non-bondholder claims against Debtor subsidiaries with an improved aggregate recovery of 55 cents, or more if a higher deal with the 2Ls is attained.  Indeed, as a result of further negotiation and mediation among the Debtors and the 2L parties, which an extension of the section 105 injunction will likely afford, the ultimate 2L recoveries may very well exceed 55 cents, which would further improve recoveries for unsecured claimholders.  All of this is only made possible by a reorganization that maintains the synergy of the combined operations of CEC and the Debtors.

4. By contrast, a termination of the section 105 injunction now threatens to undermine the Debtors' proposed chapter 11 plan and the UCC RSA, which, like the restructuring support agreements that have gone effective with the Debtors' other creditor constituencies in these chapter 11 cases, remains subject to termination by CEC if an injunction against the continuation of the guaranty litigation has not been entered.  Even if CEC does not exercise its right to terminate the restructuring support agreements, any relief that causes CEC to commence a chapter 11 case materially increases the risk that the CEC enterprise will not continue to operate in tandem with the Debtors' enterprise.  There will be a statutory creditors' committee for CEC, and potentially a statutory shareholders' committee.  New negotiations will commence.  The first lien creditors in the Debtors' chapter 11 cases may be incentivized to propose a plan under which they take their collateral and leave unencumbered assets and litigation for the other creditors.  That plan may satisfy first lien debt, but eliminates the synergistic value available to other creditors.  None of this uncertainty and risk can help the UCC.  But, it can materially harm the UCC's unsecured constituency.

5. At the very least, if this Court is inclined to modify or terminate the injunction of further litigation of the guaranty actions against CEC, the UCC submits the Court should nonetheless enjoin enforcement of any judgments against CEC resulting from such litigation.  This may enable CEC to remain outside chapter 11.  Additionally, the UCC and other parties in interest should have the opportunity at the confirmation hearing to address the appropriateness of releasing CEC and other non-debtors under the unique facts of these chapter 11 cases.  That opportunity may be forfeited if the injunction protecting CEC is not continued through the confirmation hearing.

Dated: August 23, 2016
Chicago, Illinois

Respectfully submitted,

*/s/ Paul V. Possinger*

**PROSKAUER ROSE LLP**
Martin J. Bienenstock (*admitted pro hac vice*)
Judy G.Z. Liu (*admitted pro hac vice*)
Philip M. Abelson (*admitted pro hac vice*)
Vincent Indelicato (*admitted pro hac vice*)
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

-and-

**PROSKAUER ROSE LLP**
Mark K. Thomas (IL #6181453)
Jeff J. Marwil (IL #6194054)
Paul V. Possinger (IL #6216704)
Jeramy D. Webb (IL #6321694)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Attorneys for the Statutory Unsecured Claimholders' Committee of Caesars Entertainment Operating Company, Inc., et al.*